**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**BATESVILLE DIVISION**

**HERSHEL KAGEN**                                                          **PLAINTIFF**

**V.**                                          **1:04CV0074JMM**

**HARTFORD LIFE AND**
**ACCIDENT INSURANCE COMPANY**                                   **DEFENDANT**

<u>ORDER</u>

Plaintiff Hershel Kagen was insured through his employer under a disability insurance

policy issued by Defendant Hartford Life and Accident Insurance Company (the "Plan").  On or

about February 20, 2002, Plaintiff applied for long-term disability benefits under the Plan.

Plaintiff's claim was approved by the Defendant and he began receiving benefits.  However, by

letter dated December 12, 2003, Defendant advised Plaintiff that his benefits were being

terminated because he did not meet the definition of "disability" any longer.  Plaintiff appealed

the decision.  The Defendant affirmed its decision to deny benefits on May 12, 2004.  Plaintiff

filed suit against the Defendant in the Circuit Court of Jackson County, Arkansas on August 13,

2004.  Hartford removed the case to this Court pursuant to 28 U.S.C. § 1441(a) and (b) because

the action arises under Section 502(a)(1)(b) of the Employee Retirement Income Security Act of

1974 ("ERISA").  Defendant filed a counterclaim against Plaintiff for reimbursement of

overpayment of benefits.  The administrative record has been provided to the Court and the

parties have each briefed the issues.  For the reasons set forth below, the Court finds that the

Defendant's decision to terminate Plaintiff's disability benefits was reasonable.

<u>Standard of Review</u>

ERISA provides for judicial review of disability benefit denial decisions.  The Supreme

Court has recognized that a deferential standard of review is appropriate under 29 U.S.C. §

1132(a)(1)(B), if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Plan provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 016). In other words, the Plan gives discretion to the Defendant. Therefore, the decisions of Defendant Hartford are subject to review for abuse of discretion by this Court. *King v. Hartford Life and Acc. Ins. Co.*, 414 f.3d 994 (8th Cir. 2005).

In applying an abuse of discretion standard, the reviewing Court must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002). A reasonable decision is one based on substantial evidence that was actually before the plan administrator. Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). A reviewing court may consider both the quantity and the quality of evidence before a plan administrator.

Plaintiff contends that a reasonable person could not have reached the same decision as Hartford because (1) the vocational analysis and medical reports relied upon by Hartford are not credible and (2) Hartford did not take evidence of Plaintiff's psychiatric condition into account in making its decision.

The Plan defines disability as follows:

Disability or Disabled means that during the Elimination Period and for the next 24 months you are prevented by:

1.      Accidental bodily injury;

2.      Sickness;
3.      Mental illness;
4.      Substance abuse; or
5.      Pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.  (AR017).  An "essential duty" is one that

1.      Is substantial, not incidental;
2.      Is fundamental or inherent to the occupation; and
3.      Can not [sic] be reasonably omitted or changed.  (AR017).

"Any Occupation" is defined as:

an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.  (AR017)

Plaintiff was approved for LTD benefits effective January 21, 2002 based upon multiple lumbar disc herniations, edema of feet and legs, pain in neck, upper and lower back.  (AR760, 764).  Plaintiff's physician, Dr. Darrell Ragland, limited Plaintiff to sitting for only 15 minutes at a time, and driving for 15-20 minutes at a time.  (AR765).  LTD benefits were paid to Plaintiff for twenty-four (24) months.

By letter dated December 12, 2003, Defendant informed Plaintiff that he would not be entitled to LTD benefits after January 20, 2004 because he did not meet the "any occupation" disability standard.  (AR 436-441).  The letter listed the information which had been relied upon in making the decision, including Plaintiff's Application, an Attending Physician Statement and Physical Capacities Evaluation ("APS") completed by Dr. Ragland, medical records from Dr. Ragland, Dr. Sunil Gera, and Dr. Phillips for the period from March 18, 1999 through August

3

15, 2003.  The letter stated that the Defendant had received the APS from Dr. Ragland on September 9, 2003.  Dr. Ragland's APS noted a primary diagnosis of multiple lumbar disc herniations and a secondary diagnosis of hypertension, with subjective symptoms of neck and back pain.  (AR 489).  This Physical Capabilities Evaluation was changed from Dr. Ragland's previous evaluation with respect to Plaintiff's ability to work, the number of hours Plaintiff was able to stand, sit, walk and drive.  Defendant called Dr. Ragland's office to inquire about the change.  Defendant was told by Dr. Ragland's office staff that Dr. Ragland changed the restrictions and limitations at Plaintiff's request.

Plaintiff's file was referred to Dr. William Sniger on November 6, 2003 for review.  Dr. Sniger was successful in reaching Dr. Ragland to discuss Plaintiff's medical condition.  According to the record, Dr. Ragland stated that Plaintiff had symptoms of neck and back pain and subjective weakness, a history of gout, HTN, and porphyria cutenea tarda.  Dr. Ragland noted that imaging studies showed some evidence of right L4-5 HNP and stenosis, but overall did not appear to be severe.  Dr. Ragland further indicated that there was not much in the way of objective findings on examination and that DTRs were intact.  Dr. Ragland was unable to provide an opinion regarding Plaintiff's functional capacity to perform sedentary work.  (AR 471).

Dr. Sniger reviewed the records of Dr. Sunil Gera, a pain management specialist.  Dr. Gera opined that Plaintiff suffered from a herniated disk in the cervical region, cervical radiculopathy and myofascial pain syndrome.  Dr. Gera indicated that Plaintiff had nearly normal range of motion of the cervical spine although there was some discomfort on the left lateral bending.  Dr. Gera noted that Plaintiff complained of numbness in a nondermatoral distribution.

Dr. Sniger suggested the possibility of nonorganic etiology for Plaintiff's pain and parathesis.

Dr. Gera also treated Plaintiff with epidural steroid injections from which Plaintiff reported a 60-

70% decrease in pain. (AR 475). Plaintiff was still experiencing numbness and a tingling

sensation in his hand.

On January 20, 2003, Plaintiff underwent an MRI of the lumbar spine. The MRI

revealed:

1.      Multiple levels of small disc HNPs L1 through L% with the most
        significant appearing to be the right sided neuroforaminal HNP at L4-L5.
        There may be some mild impingement on the exiting right L4 nerve
        root....
2.      Degenerative disc dessication L1 though L5 with vertebral endplate
        disease most marked at L3-L4.  (AR 254).

After review of the file and consultation with Dr. Ragland, Dr. Sniger concluded that

Plaintiff was capable of performing sedentary to light work on a full-time basis with restrictions

of no repetitive bending, twisting or climbing, and an allowance for normal periodic changes of

position.  (AR 440).  Defendant also referred Plaintiff's file to the Rehabilitation Clinical Case

Manager for an employability analysis.  The analysis identified four sedentary to light

occupations for which Plaintiff was qualified and which would provide Plaintiff an income of

60% of his Indexed Pre-disability Earnings as required by the Plan.  Therefore, Defendant

determined that Plaintiff was not disabled from "any occupation."

Plaintiff appealed the decision.  On January 21, 2004, Defendant received a letter from

Dr. Ragland.  The letter stated:

I am writing this letter on behalf of my patient Mr. Hershel Kagen whose disability was
recently declined.  This letter is my assistance in Hershel Kagen's appeal to this
declaration.  I have reviewed the letter written to Mr. Kagen and I believe that there are a
number of things that need to be clarified.  First of all, Mr. Kagen has suffered for several
years that I have followed him with arthralgia's [sic] in various joints, particularly of the

neck, lumbar area, he also suffers from gouty arthritis, and he carries the diagnosis of hypertension and current ureteral stones. His pain has progressed to the point that he is unable to drive long distances, unable to sit for long periods of time and unable to do lifting or twisting type motions. He recently in December 2003 underwent a lumbar MRI that show degenerative disc disease at L1, L2, L3 and L4 L5. Moderate disc bulging at L3 L4. He also underwent and [sic] MRI of the shoulder in December that showed a tear in the labrum and he also [sic] supraspinatus tendonitis and/or partial tear. In April 2002 he had a cat scan of his neck that showed stenosis and osteophytic hypertrophy and a disc bulge. All of these things together have resulted in Mr. Kagen being unable to drive for long periods of time, unable to lift bend or twist. (AR 434).

In a letter dated February 12, 2004, Dr. Ragland further clarified that he had not changed Plaintiff's restrictions at Plaintiff's request. Instead Plaintiff "had come in to have the restrictions and limitations filled out as I had not filled them out completely the first time he came in. So it was not at his request, but a completion of a prior incomplete record." Dr. Ragland also explained that because Plaintiff suffers from severe neck and shoulder pain, sedentary work at a desk causes him more him pain and limits his ability to sit for prolonged periods of time. Dr. Ragland concluded that sedentary work is unacceptable for Plaintiff. (AR 417).

Defendant also received medical records from two visits by Plaintiff with Dr. Gregory Ricca, a neurosurgeon. (AR 418-423). Dr. Ricca's notes state that Plaintiff underwent an MRI on October 9, 2002 which showed a "central HNP eccentric to the left at C6-7 as well." (AR 419).

Plaintiff forwarded to Defendant medical records of George M. DeRoeck, Psych. D. (AR 198-202). On March 9, 2004, Dr. DeRoeck diagnosed Plaintiff with adjustment disorder with mixed emotional features and depressive disorder, with notable apprehensive anxiety and dysphoria, of longstanding duration. (AR 201). On April 9, 2004, Dr. DeRoeck administered the Wechsler Adult Intelligence Scale-III. According to Dr. DeRoeck, Plaintiff's full scale IQ

score (80) fell in the "low end of low average range of intellectual development." (AR 195).

On April 14. 2004, Defendant solicited an independent physician review from Dr. Beth Aaronson, who is board certified in psychiatry. Dr. Aaronson tried repeatedly to contact Dr. Ragland. However, Dr. Ragland was unavailable and did not return her calls. (AR 169). Dr. Aaronson concluded:

> Dr. Ragland asserts that the claimant is unable to perform in his own position as an insurance salesperson and is unable to do any type of sedentary work activity. This does not appear to be justified on a clinical basis (i.e., based on reduction in functional activities, significant physical examination findings). There are certainly significant findings on a radiologic basis.
>
> Based on the medical records provided, the claimant appears to be capable of participating in sedentary work activity. He is certainly not able to drive long distances and should limit his time in a car to 15-20 minutes at a time. His shoulder pathology at least based on radiographic data, would limit his ability to push, pull or reach overhead. His cervical spine findings both radiographic as well as clinical were the most substantial findings noted. As such, he would need to limit prolonged sitting, particularly in sustained posture. He would be unable to hold his head in any flexed or extended position more than 15-20 minutes at a time. If he indeed were allowed to change positions, he could perform at a sedentary level for work activities. Based on the lumbar spine and ankle complaints, standing, walking, and driving would be limited, as mentioned above. The shoulder issues would limit reaching, working overhead, pushing, and pulling activities (to under 10 lbs.) In a non-repetitive, non-sustained basis. The cervical spine findings would limit sitting in a static posture and he should be allowed to change position as necessary. (AR 171-172).

At the request of Plaintiff, a Vocational Evaluation was performed by William David Elmore. Elmore concluded that Plaintiff was not employable based upon his physical restrictions and limitations and the psychological findings. (AR 107-109).

On May 12, 2004, Defendant notified Plaintiff that his appeal review had been completed and that the decision to terminate Plaintiff's benefits had been upheld. The letter detailed the deficiencies in the administrative record and the medical reasons for the denial. The letter further explained that Plaintiff had not claimed, and his medical records had not

documented,  a psychological disability prior to the termination of his LTD benefits on January 21, 2004.  Therefore, the introduction of such evidence was not relevant.  The letter advised that Plaintiff's claim had been closed and advised him of his right to file suit under ERISA.

Plaintiff argues that the Defendant should have taken his psychological condition into account when making its decision.  The Court finds that there is no evidence in the record that Plaintiff suffered from any psychological problem prior to January 21, 2004 when Plaintiff's benefits terminated. In fact,  in response to a question regarding any psychiatric impairment, Dr. Ragland noted that Plaintiff was "[e]ssentially good functioning in all areas.  Occupationally and socially effective."  (AR 765, 569).  It is not unreasonable for an administrator to deny benefits for lack of objective evidence.  *Pralutsky v. Metropolitan Life Ins. Co.,* 435 F.3d 833, 839 (8th Cir. 2006).

Plaintiff also argues that the vocational analysis and medical reports relied upon by Hartford were not credible because the information relied upon by Dr. Sniger were not current or complete.  Plaintiff contends that Dr. Sniger did not have the December 17, 2003 MRI of Plaintiff's right shoulder when Dr. Sniger completed his report.  Further, Plaintiff states that the vocational report prepared by Defendant relied heavily on Dr. Sniger's report.  Therefore, Plaintiff contends the vocational report was not complete.  However, the Defendant had the benefit of the right shoulder MRI and all of the other medical documentation during the appeal review.  Dr. Ragland was the only physician that claimed Plaintiff was unable to perform any occupation, and his opinion was equivocal.  Dr. Sniger reviewed the medical evidence available and spoke with Dr. Ragland before concluding that Plaintiff was capable of sedentary work.  Dr. Aaronson reviewed all of the medical evidence and attempted to contact Dr. Ragland.  She also

concluded that Plaintiff was able to perform sedentary work.  It is well settled that "when a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled."  *Smith v. UNUM Life Ins. Co. Of America*, 305 F.3d 789, 794 (8th Cir. 2002).  Although it is apparent that Plaintiff suffers from several conditions which cause him significant pain and limit his employment options, the evidence supports the Defendant's conclusion that Plaintiff did not meet the definition of disabled from any occupation as required by the Plan.

Defendant has counterclaimed against the Plaintiff for the amount of overpayment paid to him after he began receiving Social Security Disability Income.  Plaintiff filed an Answer denying the counterclaim, but has not responded to Defendant's Brief on the issue.  According to the Plan, "[a]n overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan" and that includes "retroactive awards of Other Income Benefits."  (AR 016).  "Other Income Benefits" is defined to include benefits paid under the United States Social Security Act.  (AR 018).  The Plan states that a claimant "must refund to us the overpaid amount."  (AR 016).

The Eighth Circuit Court of Appeals has affirmed the reimbursement by an employee beneficiary of an overpayment by an ERISA Plan administrator in *Dillard's Inc. v. Liberty Life Assurance Company of Boston*, 456 F.3d 894 (8th Cir.2006).  *See also Disability Reinsurance Management Services, Inc. v. DeBoer,*  2006 WL 2850120, *3 (E.D.Tenn. 2006); *Gilcrest v. Unum Life Insurance Co. of America*, No. 05-CV-923, 2006 WL 2251820 (S.D. Ohio 2006). Therefore, the Court finds that the Defendant is entitled to reimbursement of the overpayment made to Plaintiff.  Defendant claims that the amount of overpayment is $30,991.67.  (AR 110).

Plaintiff is directed to respond to the Court on or before August 24, 2007 regarding the amount of overpayment paid to Plaintiff as a result of his award of Social Security Disability benefits. Defendant will then have until September 1, 2007 to reply, if necessary.

After review of the record, the Court finds that there is sufficient evidence to support Defendant's denial of LTD benefits.  Defendant's denial of Plaintiff's benefits was reasonable. The Court also finds that Defendant is entitled to reimbursement of the overpayment made to Plaintiff as a result of his award of Social Security Disability benefits.  Plaintiff is directed to respond to the Court on or before August 24, 2007 regarding of the amount of overpayment. Defendant will have until September 1, 2007 to reply.  The Court will file a Judgment in this case after the overpayment issue has been resolved.

IT IS SO ORDERED this 13th day of August 2007.

James M. Moody
United States District Judge

10